

**MASSACHUSETTS WATER RESOURCES AUTHORITY**

Chelsea Facility
2 Griffin Way
Chelsea, Massachusetts 02150

Telephone: (617) 242-6000
Facsimile: (617) 305-5990

Frederick A. Laskey
Executive Director

August 17, 2017

Mr. Justin Pimpare
Regional Pretreatment Coordinator
U.S. Environmental Protection Agency
5 Post Office Square – Suite 100
Boston, MA 02109

Re:    MWRA Submission of Revised Enforcement Response Plan for Toxic Reduction and Control
      Department

Dear Mr. Pimpare:

Pursuant to Part I C, Paragraph 9, of the National Pollutant Discharge Elimination System (NPDES) Permit
No. MA0100404, issued to the Massachusetts Water Resources Authority (MWRA) for its Clinton
Wastewater Treatment Plant, enclosed is a revised Enforcement Response Plan (ERP) for MWRA's Clinton
Sewerage Service Area for your review and comment. The ERP has been revised to incorporate changes
made in MWRA's Toxics Reduction and Control (TRAC) Department's pretreatment program since the
original ERP was approved in 1992. Specifically, the ERP reflects upgrades to TRAC's Pretreatment
Information Management System (PIMS), and the development and addition of Group Permits for Photo
Developers, Food Processors, and Low Flow/Low Pollutant Dischargers. We are currently operating under
the guidelines set out in this plan for both the Boston Harbor and Clinton Sewerage Service Areas.

Under separate cover, MWRA is submitting a written technical evaluation analyzing the need the revise its
local limits for the Clinton Sewerage Service Area. MWRA will propose, if required, revisions to its sewer
use regulations following receipt of comments from the Environmental Protection Agency (EPA) and
Massachusetts Department of Environmental Protection, consistent with public notice requirements. MWRA
most recently revised its sewer use regulations on August 7, 2009, to incorporate EPA's Pretreatment
Streamlining Rule changes, including those applicable to slug control evaluations. EPA had approved these
changes on July 7, 2009. If you have any questions during your review of the ERP, please call Tracy
McGrath at 617-305-5947. We look forward to your review and comment.

Sincerely,

John Riccio
Director
Toxic Reduction and Control Department

cc: Susannah King, DEP
     Carolyn Fiore, MWRA
     Tracy McGrath, MWRA

Massachusetts Water Resources Authority
Enforcement Response Plan

In accordance with 40 CFR Part 403.8(f)(5), and the Massachusetts Water Resources Authority (MWRA) NPDES Permits for the Deer Island Treatment Plant and Clinton Treatment Plant, the Toxic Reduction and Control Department (TRAC) has revised its Enforcement Response Plan (ERP) to reflect organizational changes within TRAC. The revised ERP was developed in accordance with EPA's 1988 *Pretreatment Compliance Monitoring and Enforcement Guidance*, and EPA's *1989 Guidance for Developing Control Authority Enforcement Response Plans*. In addition, the ERP is based upon MWRA's regulations (360 C.M.R. Sections 1.00, 2.00, and 10.000) and the MWRA's experience in initiating and following up on enforcement actions.

<u>Regulatory Requirements and the Basis for the Enforcement Response Plan</u>

The Enforcement Response Plan (ERP) meets the following criteria as set forth in 40 CFR 403.8(f)(5):

    (i)    Describes how the MWRA will investigate instances of noncompliance;

    (ii)    Describes the types of escalating enforcement responses the MWRA will take in response to all anticipated types of industrial user violations and the time periods within which responses will take place;

    (iii)    Identifies (by title) the official(s) responsible for each type of response;

    (iv)    Adequately reflects the MWRA's primary responsibility to enforce all applicable pretreatment requirements and standards, as detailed in 40 CFR 403.8(f)(1) and (f)(2).

This document is intended as guidance solely for the use of MWRA personnel. Nothing herein is intended to create legal rights or obligations or to limit the enforcement discretion of the Authority.

<u>Organization of the ERP</u>

The ERP is arranged into three major sections. The first section, Enforcement Organization and Priorities, describes how TRAC's Enforcement Group is organized and how it indentifies and investigates instances of noncompliance. This section includes TRAC's established priorities. The second section describes the enforcement mechanisms used by TRAC to respond to instances of noncompliance and the timeframes for initiating each type of action. The enforcement response mechanisms which are indentified are consistent with the requirements of MWRA Sewer Use Rules and Regulations and Massachusetts law. The third section presents the cornerstone of the ERP, the Enforcement Response Guide. The Guide sets forth the criteria, procedures, responsibilities, and time frames for selecting and initiating an enforcement response for violations of MWRA Sewer Use Rules and Regulations.

I.      **Organization and Priorities**

Organization of the Enforcement Section

The Enforcement Section tracks the compliance status of industrial users regulated by the MWRA Sewer Use Rules and Regulations and responds to noncompliance.  The section presently consists of a Senior Program Manager and four Compliance Coordinators.  All staff in the Enforcement Section report directly to the Senior Program Manager, Compliance, who reports directly to the Director of TRAC.

The Senior Program Manager, Compliance, establishes enforcement priorities for the Enforcement Section.  In addition, he/she provides advice to the enforcement staff on enforcement directions, document preparation, policies, *etc.*

Each Compliance Coordinator is assigned a subset of the MWRA's Sewer Use Communities, based on the number of significant industrial users (SIUs) in each community.  The Compliance Coordinator is assigned the lead compliance role for all permitted industrial users within her/his assigned communities and is therefore responsible for tracking the compliance status of those users and for taking enforcement actions.

The Compliance Coordinators are the primary contacts on all compliance issues for their assigned caseload.  They are responsible for:

- Responding to questions from industrial users regarding compliance issues;
- Tracking compliance for their assigned caseload; and,
- Responding to instances of noncompliance in accordance with MWRA regulations and the Enforcement Response Guide (section III of this Plan), including: a) initiating formal enforcement actions; b) drafting documents as necessary to support enforcement activity; c) responding to industrial users' requests for informal appeals of notices and orders; d) following up on enforcement actions by reviewing reports submitted pursuant to them; and, e) supporting administrative and judicial preparation and development.

Compliance Screening

The Compliance Coordinators become aware of instances of noncompliance from various sources including TRAC's Pretreatment Information Management System (PIMS), facility inspections and reports, monitoring reports, concerned citizens, concerned employees of permitted users, other federal, state, and local public agencies, and other MWRA departments.

PIMS contains information about each permitted Industrial User (IU) in the Authority's sewer service areas.  Among other things, the database tracks all industrial user permitting requirements and all industrial user sampling and analytical data (from both self-monitoring reports and MWRA monitoring events).  Self-monitoring data is securely submitted through TRAC's online web application called webSMR.  MWRA sampling data is transferred to PIMS daily from the MWRA's Laboratory Information Management System (LIMS). PIMS is

designed to automatically calculate, on a daily basis, violations based on the reporting requirements and discharge limits established in an Industrial Users (IUs) permit. Discharge violations are calculated on all sampling results, both MWRA and self-monitoring.

Compliance Coordinators receive daily notifications via their PIMS homepage alerting them to violations generated in PIMS. Compliance Coordinators investigate the violations, by checking PIMS, and the industry's file to determine what type of enforcement action is required. The information considered includes, but is not limited to, previous enforcement actions, an industry's compliance history, and the significance of the violation. The information contained in PIMS is also available for review by Staff in various reports.

Compliance Coordinators also review reports generated by TRAC's Industrial Coordinators (IC's) and Sampling Staff. Significant Industrial Users (SIU's)[1] are inspected by an IC at least once per year. Other users are inspected periodically (every three, four, or five years, depending on permit category) to review for permit renewal. Any user may be inspected more frequently depending on the significance of its discharge, its compliance history, and enforcement related requests. During an inspection, ICs review the facility's operations and pretreatment systems to ensure the facility is in compliance with MWRA Sewer Use Regulations. After each inspection, the IC enters his/her findings in PIMS. PIMS generates a standardized inspection report that describes the IC's observations and provides specific information regarding processes, pretreatment systems, documents reviewed by the IC on site, flows, chemicals used on site, the hours of operation, and suspected or observed violations or potential violations. PIMS also generates a Sewer Use Discharge Permit and a Permit Fact Sheet. Routine inspections are planned one month in advance. In addition, ICs conduct follow-up inspections to support enforcement measures.

TRAC's Sampling Associates are responsible for sampling industrial users. SIUs are sampled at least once per year. When necessary, more frequent sampling is conducted based on a user's compliance history, the impact on residuals of the pollutants discharged by the user, special projects, seasonal or other variations in discharge to the sewer system, contaminants and/or loadings of concern, site specific requirements, and to support enforcement actions. TRAC has established procedures so that sample results can be used to support enforcement actions. These procedures include a detailed chain of custody form that must accompany each sample and a system for recording field notes.

---

[1] **Significant Industrial User (SIU)** *40 CFR 403.3(v)*
(1) All users subject to categorical pretreatment standards under 40 CFR 403.6 and 40 CFR chapter I, subchapter N, except those designated as NSCIUs; and (2) any other IU that discharges an average of 25,000 gpd or more of process wastewater to the POTW (excluding sanitary, noncontact cooling, and boiler blowdown wastewater); contributes a process wastestream that makes up 5 percent or more of the average dry-weather hydraulic or organic capacity of the POTW treatment plant; or is designated as such by the POTW on the basis that the IU has a reasonable potential for adversely affecting the POTW's operation or for violating any pretreatment standard or requirement in accordance with 40 CFR 403.8(f)(6).

Investigation of Noncompliance

Daily, Compliance Coordinators are notified electronically on their homepage in PIMS of all discharge and reporting violations flagged by PIMS in the previous twenty-four hours. The Compliance Coordinator reviews each violation and determines what level of enforcement action is appropriate according to the Enforcement Response Guide. If the Compliance Coordinator determines that a Notice of Violation is appropriate, he/she will generate the Notice of Violation automatically in PIMS and track compliance with the Notice of Violation.

When the Compliance Coordinator determines that escalated enforcement is appropriate, he/she will take the lead. In determining whether to escalate enforcement, the Compliance Coordinator will consider, among other things:

- the nature of the violation (pretreatment standards, reporting (late or deficient) compliance schedules);
- frequency of the violation (isolated or recurring);
- potential impact of the violation (e.g., interference, pass through, or POTW worker safety); and,
- economic benefit gained by the violator;

The Compliance Coordinator is the main contact on all compliance issues for his/her assigned region. He/she is responsible for:

- responding to questions from industrial users regarding compliance issues;
- tracking compliance for assigned caseloads; and,
- responding to instances of noncompliance in accordance with MWRA regulations and the Enforcement Response Guide, including:

  1. initiating formal informal response actions;
  2. drafting documents as necessary to support enforcement activity;
  3. responding to industrial users' requests for informal appeals of notices and orders;
  4. following up with enforcement actions by reviewing reports submitted pursuant to them; and
  5. supporting administrative and judicial case preparation and development.

Pollution Prevention Program

Formal enforcement actions issued by TRAC include a requirement that the Industrial User investigate the cause(s) of the violation(s) and submit a report that includes an evaluation of pollution prevention options as part of its corrective action.

Enforcement Priorities

To ensure that violations are addressed in order of seriousness, TRAC has established the following priorities for responding to violations.

4

1.    Present or imminent danger to health, public welfare, the environment, the sewer, MWRA facility, or residuals.

2.    SIUs

    (A)    False reports, misrepresentation, or other intentional wrongs.
    (B)    Violating a Notice or Noncompliance (NON), Order, or Settlement Agreement.
    (C)    Discharge violations (Significant Noncompliance violations are higher priority[2]).
    (D)    Failure to report or late reports (Significant noncompliance violations are higher priority).
    (E)    Other permit or regulations violations.

3.    Septage Haulers

    (A)    False reports, misrepresentation, other intentional wrongs.
    (B)    Violating a NON, Order, or Settlement Agreement.
    (C)    Discharging a hazardous waste or industrial waste.
    (D)    Discharging out-of-district waste.
    (E)    Discharging in the wrong location.
    (F)    Other permit or regulations violations.

4.    NON-SIU's, including Group and General Permittees

    (A)    False reports, misrepresentation, other intentional wrongs.
    (B)    Violating a NON, Order, or Settlement Agreement.
    (C)    Discharge Violations.
    (D)    Failure to report or late reports.
    (E)    Other permit or regulations violations.

5.    Gas/Oil Separator Violations

    (A)    False reports, misrepresentation, other intentional wrongs.
    (B)    Violating a NON, Order of Settlement Agreement.
    (C)    Failure to install or maintain a separator.
    (D)    Failure to report or late reports.
    (E)    Other regulations violations.

II.    **Enforcement Options**

Each instance of noncompliance will be met with an enforcement response. The initial response may be formal or informal as indicated in the Enforcement Response Guide. The options reflect the MWRA's authority to take enforcement action against users that have violated or threaten to violate the MWRA Sewer Use Regulations (360 C.M.R. 10.000).

---

[2] MWRA regulations at 360 CMR 10.000 state that Significant noncompliance (SNC) shall have the meaning contained in 40 CFR 403.8(f)(2)(viii).

When determining the appropriate response, a variety of criteria are reviewed, including but not limited to:

- Magnitude of the violation;
- Duration of the violation;
- Effect of the violation on the receiving water;
- Effect of the violation on the POTW;
- Compliance History of the industrial user; and,
- Good faith of the industrial user.

More serious violations will be met with more severe initial responses than less serious violations. Depending upon the level of egregiousness of the violation, and the recommended enforcement action, Compliance Coordinators consult with TRAC Department managers, assigned attorneys from MWRA's Law Division, and other senior managers at the MWRA. MWRA's enforcement options are described below.

Informal Enforcement Responses

Informal responses are appropriate when responding to relatively minor or infrequent instances of noncompliance. Informal responses include a Notice of Violation (NOV), an informal meeting, or other communication between MWRA and the user. A NOV for a discharge violation instructs the user to: 1) investigate the violation and submit a written explanation as to why the violation occurred and what steps the user will take to ensure the violation does not persist; 2) correct the problem and increase sampling to demonstrate compliance. When a NOV is issued for a reporting violation, the user is asked to correct the violation by submitting or re-submitting the missed report within 15 days of receipt of the NOV.

Informal actions should be initiated within 10 working days of discovering the violation. NOVs are generated and logged automatically in PIMS.

Formal Enforcement Responses

Notice of Noncompliance

A Notice of Noncompliance (NON) is typically the first formal enforcement action issued in response to more serious violations and /or recurring violations. A NON provides formal notification of the violation(s), requires compliance by a date certain, and requires the submission of a compliance schedule describing the steps a user will take to achieve compliance. In most cases, a NON is issued within 45 days of discovering a recurrent violation or other serious violation and is accompanied by an order.

Order or Compliance Schedule

The MWRA may issue an order or compliance schedule requiring an industrial user to complete certain actions or to correct a violation or threatened violation, and/or to cease and desist a violation and/or action that causes or threatens to cause a violation. Orders, generally issued with

a NON, usually include a compliance schedule with milestones and require a user to submit a plan and schedule for achieving compliance with MWRA's regulations. When an Order is issued for discharge violations, it will also require the user to demonstrate compliance by implementing a sampling schedule. The sampling schedule, which is more than is required by a user's permit, is required to demonstrate that corrective actions have been successful and will ensure compliance. An Order is generally issued within 45 days of discovering a violation. Compliance schedules may also be issued in a Sewer Use Discharge Permit.

Cease and Desist Order (C&DO)

A Cease and Desist Order is issued in instances when there is a need for an immediate halt to an action or activity that violates or threatens to violate MWRA rules, regulations, orders, permits and other requirements (for example, a discharge that causes harm to the sewerage system or worker health and safety). A Cease and Desist Order may be issued with a Penalty Assessment Notice (PAN).

Supplemental Order to Comply (SOC)

A SOC is issued after another Order has been issued and usually accompanied by a Penalty Assessment Notice. The requirements of an SOC are similar to the requirements of an Administrative Order. SOCs accompanying a Penalty Assessment Notice will be issued within 60 days of discovering the violation.

Enforcement Order (EO)

An EO is issued when traditional corrective actions are not required (for example, to septage hauler). EOs will be issued within 45-60 days of discovering a violation.

Milestones and deadlines for compliance established in all Orders and Compliance Schedules are entered into PIMS so compliance can be tracked while the action is pending. Orders describe penalties that may be assessed for noncompliance with the terms of the Order.

Penalty Assessment Notice (PAN)

360 C.M.R. 10.001[3] and 10.005 provide the MWRA the legal authority to assess penalties for violations of MWRA regulations or a sewer use discharge permit. The MWRA may assess a penalty of up to $10,000 per violation per day. In the case of a continuing violation, each day's violation may be a separate violation. The PAN will be issued consistent with 360 C.M.R. 2.00 and will be issued within 60 days of discovering a violation that requires a penalty. PANs will be issued when a user violates a NON and/or Order, and may be issued for other violations that the MWRA deems serious, including willful or intentional violations of the regulations or a permit.

---

[3] 360 CMR 10.001 cites MWRA's statutory authority: St. 1984, c. 372 (MWRA's Enabling Act), St. 1987, c. 307, and St. 1991, c. 41.

Revocation of Permit or Denial of Permit/Permit Renewal

The MWRA may revoke, deny renewal of, or deny initial issuance of an industrial user's permit. Permits may be revoked or denied, after notice to the industrial user pursuant to 360 CMR 10.007(10), and 2.11 and 2.15 to halt or prevent any discharge of pollutants. The MWRA will revoke a permit in a Notice of Proposed Permit Revocation (NPPR). Where revocation or denial is an appropriate enforcement response, the action will be taken within 60 days of determining that such a response is appropriate. NPPRs are generally issued when the violator has failed to come into and maintain compliance after less severe enforcement.

Criminal Prosecution

Actions that may be deemed to reflect criminal intent or criminal negligence will be referred to the Massachusetts Attorney General's Office, the Environmental Strike Force, or other appropriate governmental agencies, for criminal prosecution. See 360 CMR 2.11(7)(b). In deciding whether to pursue criminal prosecution, the MWRA may consider a variety of factors including but not limited to the following:

- willfulness of the violation;
- industrial user's knowledge of the violation;
- nature and seriousness of the violation;
- need for deterrence;
- compliance history of the industrial user; and
- adequacy of penalties and sanctions available through civil or administrative enforcement actions.

Referrals for criminal prosecution will be made within 30-60 days of the determination that a criminal violation is occurring or has occurred.

Civil Referral

Where administrative procedures are unsuccessful in returning a user to compliance or ensuring the continued compliance, or where the MWRA has determined that a civil action may be more effective, the MWRA may proceed with a civil referral to the Massachusetts Attorney General's Office or other appropriate governmental agencies within 30-60 days of a determination that a civil referral is appropriate.

Emergency Suspension of Service

Pursuant to 360 C.M.R. 10.107 , the MWRA may suspend service to any user, after informal notice, upon determination that a discharge appears to present an imminent danger to health, public welfare, or the environment, or threatens to interfere with the operation of the sanitary sewer system or a municipal sewer system.

TRAC Compliance Staff will take one or more of the enforcement options described above to respond to instances of noncompliance with the MWRA's Sewer Use Regulations. TRAC's

enforcement approach is progressive, that is, violations are addressed at the lowest level possible. Where an industrial user's response to an enforcement action is unacceptable to the MWRA, the MWRA will escalate its enforcement responses until the industrial user has returned to compliance. A decision to escalate enforcement to a formal level is generally in response to an unresolved instance of SNC, failure to achieve compliance in a specific time period through less formal means, or the advice of legal counsel. Enforcement action is not, however, contingent upon the completion of any less formal procedure and depending on the facts a formal procedure may be needed as an initial response to noncompliance.

The standard escalation path for continued or recurring violations is as follows:

Notice of Violation ⇒ Notice of Noncompliance and Order ⇒ Penalty Assessment Notice and Supplemental Order ⇒ Notice of Proposed Permit Revocation

## III.   The Enforcement Response Guide

The Enforcement Response Guide (The Guide) covers the following broad categories of violations: illegal discharges; discharge violations; sampling and reporting violations; compliance schedule violations; spill incidents; violations detected during site visits; violations by septage haulers; and, gas/oil separator violations. Within each category, more specific violations are described, along with the nature of the specific violations.

The Guide also provides a range of enforcement responses from which enforcement personnel will select an appropriate enforcement response for a specific violation. Although, the Guide identifies staff responsible for each type of response, the Senior Program Manager and TRAC Director provide oversight and guidance throughout the enforcement process.

**Massachusetts Water Resources Authority**
**Enforcement Response Guide**

| Discharge Violations | | | |
|---|---|---|---|
| Noncompliance | Nature of Violation | Enforcement Response Options | Personnel |
| Exceedance of discharge limits | Isolated, 1st or 2nd violation (non-consecutive, or different parameters) | NOV within 10 working days of discovery | CC |
| | Repeated or frequent violations | NON Order within 45 days of receipt of results of repeat sampling following NOV; PAN and SOC within 60 days of noncompliance with NON/Order; NPPR; civil referral | CC; Legal |
| | Significant Noncompliance | NON Order within 60 days of SNC determination; PAN and SOC within 60 days of discovery of continuing violations after NON Order or Ruling; NPPR within 60 days of noncompliance with SOC | CC; Legal |
| | Caused know environmental or POTW damage or endangered worker safety | Cease and Desist Order to halt discharge within 10 working days of discovery or immediate emergency suspension of service and PAN within 45-60 days; civil referral within 45 days of determination that further action is necessary; NPPR within 60 days of continued violations | CC; Legal |
| | Willful or intentional | PAN and Cease and Desist Order; criminal referral | CC |
| Slug Load Discharge | Isolated without known damage | NOV within 10 working days of discovery; Order to develop a spill control plan within 45 days if necessary; PAN and SOC within 60 days of noncompliance with Order | CC |
| | Isolated with known interference, pass-through, or damage | NON Order within 45 days of discovery; PAN and SOC within 60 days; Immediate emergency suspension of service; NPPR within 60 days of continued noncompliance with SOC | CC |
| | Recurring (2nd violation is past 2 years) | SOC within 45 days; PAN within 60 days of recurrence or civil | CC |

| | | | |
|---|---|---|---|
| | Willful or intentional | referral within 45 days of recurrence; NPPR within 60 days of continued noncompliance with SOC<br><br>PAN and Cease and Desist Order within 60 days of discovery; criminal referral | CC |

## Sampling and Reporting Violations

| Noncompliance | Nature of Violation | Enforcement Response Options | Personnel |
|---|---|---|---|
| Sampling or reporting deficiencies | Isolated or infrequent (1st or 2nd violation) | NOV within 10 working days of discovery | CC |
| | Frequent (3rd violation in the last 2 years) or persistent | NON Order within 45 days; PAN within 60 days of violation of NON Order | CC; Legal |
| Complete failure to sample or report | Significant Noncompliance | NOV within 10 working days of discovery of failure to receive report; NON Order within 45 days of noncompliance with NOV; PAN and SOC within 60 days of compliance due date with NON Order; NPPR | CC, Legal |
| | G1 Annual Silver Sample | NOV (if 1st time in past 5 years) within 10 days of discovery; PAN and Order (if 2nd time or more in past 5 years) within 90 days of discovery. | CC; Legal |
| | | | CC; Legal |
| | G1 Annual Group Permit Compliance Report | PAN and Order within 90 days of discovery | CC; Legal |
| | G2 Biennial Group Permit Compliance Report | PAN and Order within 90 days of discovery | CC; Legal |
| Failure to submit compliance schedule (SNC) | Violation of Order | SOC with PAN within 30-60 days of noncompliance with due date in Order; NPPR with 60 days; civil referral | CC; Legal<br><br>CC; Legal |
| | Isolated or infrequent; no know effects | NOV within 10 working days of discovery | CC; Legal |
| Failure to notify of effluent limit violation or slug load discharge | Frequent or continued violations (2nd violation in last 2 years) | NON Order within 45 days; PAN and SOC within 60 days of noncompliance with NON Order | CC; Legal |

| | Caused know environmental or POTW damage (SNC) | Immediate emergency suspension of service. PAN within 45 days of discovery; Civil or criminal referral; NPPR | |
|---|---|---|---|
| Failure to install safe and accessible monitoring location | | Letter requesting modifications within 10 working days of discovery; NON/Order within 45 days of noncompliance with letter; PAN and SOC within 60 days of compliance due date in NON/Order | |

## Compliance Schedule Violations

| Noncompliance | Nature of Violation | Enforcement Response Options | Personnel |
|---|---|---|---|
| Missed milestone date | Will not affect other milestone dates or other dates | Telephone call or letter within 10 working days of discovery | CC |
| | Will affect other milestone or final compliance date | Meeting or letter within 10 working days of discovery; NON/Order within 45 days of missed date; PAN within 30-60 days of missed date | CC |
| Failure to meet compliance schedule reporting requirements | Did not submit report but did complete milestone | NOV within 10 working days of deadline. NON/OTCA within 45 days of violation (for permit compliance schedules only) | CC |
| | Did not submit or complete Milestone | NON/Order within 45 days of deadline (for permit compliance schedules only); PAN within 60 days of continued noncompliance with NON/Order | CC; Legal |
| Missed final date | Demonstrably unavoidable, out of the control of permittee | Telephone call, letter, or meeting within 10 working days of due date | CC |
| | 30 days of more outstanding; failure or refusal to comply without good cause | PAN; NPPR; civil referral | CC ; Legal |
| | | | CC; Legal |
| Reporting false information | Any instance (SNC) | Criminal referral within 45 days of discovery; NPPR | |

## Spill Incidents

| Noncompliance | Nature of Violation | Enforcement Response Options | Personnel |
|---|---|---|---|
| Spill incident | Reported and investigated | NOV within 10 working days of discovery | CC |
| | Failure to report spill | NON/Order with 45 days of discovery;  PAN and SOC within 60 days of discovery of noncompliance with NON/Order | CC; TRAC |
| Repeated spill incidents | Occurs subsequent to NON/Order for prior incident | PAN within 60 days of discovery of  subsequent spill | CC |
| | Failure to develop/upgrade spill control plan | NON/Order within 45 days of discovery; PAN and SOC within 60 days of noncompliance with NON/Order; NPPR | CC |
| | Results in known environmental or POTW damage | Immediate emergency suspension of service;  PAN with EO or SOC within 60 days of discovery; NPPR | CC |

## Violations Detected During Site Visits

| Noncompliance | Nature of Violation | Enforcement Response Options | Personnel |
|---|---|---|---|
| Denial of Access | | Search warrant or PAN and EO within 30 days of denial | CC |
| Minor violation of sampling procedures | Any instance | Telephone call or letter within 10 working days of discovery | CC |
| Major violation of sampling procedures | No evidence of negligence or intent | NOV within 10 working days of discovery;  NON/Order if violation continues without correction within 45 days of discovery of continuing violation; PAN within 60 days of deadline set in NON/Order | CC |
| | Willful or intentional to manipulate sample results | PAN within 60 days;  Criminal referral | CC; Legal |
| Minor violation of permit condition | No evidence of negligence | NOV within 10 working days of | CC |

| | | | |
|---|---|---|---|
| (e.g., record keeping) | or intent | discovery; NON Order within 45 days of noncompliance with NOV; PAN within 60 days of failure to comply with NON Order | CC; Legal |
| | Willful or intentional to preclude MWRA's discovery of pertinent information | PAN within 60 days; criminal referral | CC; Legal |
| Major violation of permit condition (e.g., bypass of treatment system, once-through non-contact cooling water, dilution) | No evidence of negligence or intent | NON Order within 45 days of discovery; PAN and SOC within 60 days of noncompliance with NON Order; NPPR | CC; Legal |
| | Willful or intentional | PAN with Cease and Desist Order within 60 days of discovery; NPPR; Criminal referral | |

## Violations by Septage Haulers

| Noncompliance | Nature of Violation | Enforcement Response Options | Personnel |
|---|---|---|---|
| Failure to comply with requirements of municipal permit issued by MWRA | Discharger unaware of requirements | NON EO within 45 days of discovery; PAN and Cease and Desist Order with 60 days of noncompliance with EO | CC |
| | Intentional violation of requirements | PAN and EO within 30 to 60 days of discovery; Criminal referral | CC; Legal |
| Discharging septage originating outside of MWRA's Sewerage District | Discharger unaware of prohibition | NON EO within 45 days of discovery; PAN and SOC within 60 days of noncompliance with EO | CC |
| | Willful or intentional | PAN and EO within 30-60 days of discovery; Criminal referral | CC; Legal |
| Discharging industrial septage without industry permit from MWRA | Discharger unaware of permit requirements, prohibitions and local limits not violated | NON EO within 45 days of discovery; PAN and Cease and Desist Order within 60 days of noncompliance with EO | CC |
| | Willful or intentional, or discharge violates local limits and or prohibitions | PAN and EO within 30-60 days of discovery; Criminal referral | CC; Legal |

## Gas/Oil Separator Violations

| Noncompliance | Nature of Violation | Enforcement Response Options | Personnel |
|---|---|---|---|
| Failure to provide access | 1st or 2nd attempt by MWRA | Verbal request immediately. | RI |

|  | to check separator | Letter requesting access within 10 days of discovery |  |
|---|---|---|---|
|  | 3rd attempt by MWRA to check separator | NON/Order within 45 days;  PAN and SOC within 60 days of violation of NON/Order | RI; CC |
| Failure to maintain separator | 1st or 2nd offense | Verbal notice and follow-up letter within 10 days of discovery | RI |
|  | 3rd offense or continued failure | NON/Order within 45 days;  PAN and SOC within 60 days of violation of NON/Order | RI; CC |
| Failure to install separator | Owner/Operator unaware of requirement | Verbal notification and follow-up letter within 10 days of discovery; NON/Order within 45 days of noncompliance with letter | RI |
|  | Continued failure to comply | PAN and SOC within 60 days of violation of NON/Order | RI; CC |